OPINION OF THE COURT
Harry Waitzman, J.
facts
In the instant case, the defendant was arrested at 2:16 a.m. *310 early on Friday morning, August 31, 1984 after his car hit a curb on North Middletown Road, Nanuet, disabling his car. The police investigated and defendant was charged with driving while intoxicated with an alleged blood alcohol content of .17% in violation of Vehicle and Traffic Law § 1192 (2) and (3).
The defendant was arraigned in Justice Court at 10:30 a.m. on Friday, August 31, 1984. At this arraignment, the defendant was released on his own recognizance. The case was adjourned by the court to September 17, 1984 for all purposes.
There is no record of either defense counsel or an Assistant District Attorney being present at arraignment.
On the adjourned date, September 17, 1984, 17 days after arraignment the requisite statutory notice was not served by the District Attorney’s office that certain culpatory statements made by the defendant would be used against him at his trial. The defendant’s alleged statement was recorded by the police as "Yes, I had something to drink. I had two sixpaeks”.
On October 17, 1984 the case was adjourned to November 4, 1984 at the defendant’s request to permit his attorney to initiate discovery proceedings. In response to the discovery demand received from defendant, the District Attorney’s office finally awoke to the need to serve its notice of intention to use the culpatory statements made by defendant against him at his trial as required by CPL 710.30.
Defendant’s CPL 710.30 notice dated October 15, 1984 was served on the defendant on or about October 27, 1984 thereby placing the defendant on notice of need to suppress such statements for any alleged illegality pursuant to CPL 710.40 procedure.
PROCEDURE
The defendant moved in a timely manner to preclude the culpatory statement made to police officers by motion to suppress initiated February 4, 1985. This motion made by defense counsel, far in advance of a trial date, was denied on May 8, 1985 by this court in a short-form opinion on grounds that the office mishap by the District Attorney’s office demonstrated no bad faith and there was no prejudice to the defendant in the service of the belated notice of intention to use culpatory material where the case was not yet set down for trial.
The instant motion therefore constitutes renewal of the *311 prior motion to dismiss, on grounds that the court overlooked the ruling of People v Briggs (38 NY2d 319 [1975]).
THE ISSUE PRESENTED
The issue is, whether the People’s failure to give defendant the statutory notice within 15 days after arraignment that it intended to offer culpatory admissions made by defendant to a police officer, which failure resulted from a prosecutorial mishap constituted "good cause”, sufficient to permit the People to serve late notice on defendant where notice was belatedly given before the trial date?
DECISION
The renewed motion to dismiss by defendant compels scrutiny of the statutes in question and leading cases since the defense argues that the court has overlooked a controlling decision, People v Briggs (supra).
In 1970 the New York State Legislature enacted CPL 710.30 requiring the People to serve advance notice on defendants of its intent to place in evidence statements or admissions that were culpatory and made by the defendant to a public servant (CPL 710.30; L 1970, ch 996, § 1, eff Sept. 1971).
The statutory procedure, as enacted in 1970, made it possible for a defendant to move, on the receipt of notice, to suppress any statements made involuntarily in accordance with requirements set forth in CPL 710.20 which detailed the requirements for a motion to suppress evidence.
The statute as originally enacted provides in subdivision (2) "[s]uch notice must be served before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial, pursuant to subdivision one of section 710.40, to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such notice during trial” (emphasis added).
The defendant relies upon the Briggs case (supra) as asserting there must be strict compliance with the statute, that where there is a failure to serve within the 15-day period, the circumstance there is a law office failure or prosecutorial mishap in neglecting to serve a section 710.30 notice in a timely manner, is not "good cause” enabling the court in its discretion to give leave to serve a notice after the 15-day period counted from the time of arraignment.
*312 Let us examine the facts of the supposedly controlling case. In Briggs (supra), the original statute was construed on facts where the defendant became involved in a traffic accident, left the scene without reporting the property damage, and was charged with a violation of Vehicle and Traffic Law § 600. In the middle of trial, for the first time, defendant received notice that statements allegedly made to the police would be used to rebut the defendant’s testimony given at the trial.
The trial court in Briggs (supra) ruled during the trial there was good cause to permit the prosecution to serve the notice during the trial. Defendant’s suppression hearing was thereupon held and the statements were found to have been made voluntarily permitting a rebuttal of the defense. The defendant was convicted.
In Briggs, the Trial Judge relied upon the statutory authority conferred by CPL 710.30 (3) permitting the late service of notice even "during trial”.
On appeal, however, the Court of Appeals held, "law office failure” by the District Attorney’s office was not "good cause” permitting the trial court in its discretion to serve a belated notice during trial and reversed, requiring a new trial.
A careful reading of the Briggs case (38 NY2d 319, supra) demonstrates that defense counsel was prejudiced by the court’s exercise of discretion permitting the People to serve such notice in the middle of the trial even though this was permissible under CPL 710.30 as originally enacted.
The legislative history of this statute demonstrates that the Legislature, by further amendment provided for its substantial revision in the light of the results of the Briggs case. The amendment was designed to prevent service of a notice during trial because of the surprise and consequent prejudice to defendant.
After the Briggs case and the statute’s amendment, defendant argues there is judicial intolerance of delay and notice must be served on defendant’s counsel within 15 days after arraignment otherwise the prosecutorial mishap requires dismissal for failure to comply with the statute.
But the statute, as revised, continues to provide a safety valve. If "good cause” is shown, the court may permit the People to serve such notice after the 15-day time period counted from date of arraignment.
In trying to interpret this statute, the trouble with the *313 legislative amendment is that in the push and shove of the legislative process, we go from one extreme (service even during trial) to another extreme (service permitted only within 15 days of arraignment).
The purpose of the statute as amended is to give greater efficacy to the policy of the original statute, viz., to give defendants notice prior to trial that damaging statements possibly suppressable, made by the defendant to a public servant would be offered in evidence and to warn defendant to move to suppress.
The instant case involves the revised statute and the facts are far removed from the facts of the Briggs case, which is distinguishable both on the facts and law and therefore not controlling.
Further, the reliance by defense counsel upon Briggs misreads the purpose of the statute. In Briggs, during trial, after the defendant had testified, the People finally awoke to the need to rebut his testimony by calling upon a police officer who offered statements the defendant made after apprehension that were culpable and rebutted his direct testimony.
The Briggs case and the legislative amendment to the statute relied upon demonstrates both judicial and legislative intolerance for inexcusable delays in serving CPL 710.30 notice by prosecution’s staff. The 1976 amendment of the statute (L 1976, chs 8, 194), as outlined hereinabove, demonstrates legislative intent to make law office failure no excuse to spring testimony upon unsuspecting defense counsel during a trial. Such late notice must surprise defense counsel, and in all ways, prejudice defense trial preparation. But this is not the case here, where a trial date has not yet been set.
This case demonstrates the need for flexibility in reading the Criminal Procedure Law in instances where it provides for a short, specified period for service of legal notice to an opposing party. Where there is noncompliance or belated service, the court discharges its role by reviewing whether good cause is shown — by weighing in the balance, the substantial rights of the defendant to fair notice of the impending use of damaging admissions, measured against the responsibility of the District Attorney to investigate and prosecute an increasing number of criminal matters.
The high case load presented to this court, and to the largest and most important law offices in most suburban counties, viz., the District Attorney’s office, means inevitable *314 "foul-ups” by all participants in the criminal justice system including defense counsel (and Judges) on occasion.[1]
The primary role of the Judge is to oversee a fair contest between competent, but fallible staff of the District Attorney’s office, and counsel for the defendants, ever zealous to protect the rights of the accused by seeking dismissal for proper cause.
But, beyond the sparring of counsel, is the public’s right to a criminal justice system which functions fairly and efficiently, balancing our citizen’s right to community peace and the defendant’s right to due process with fair notice and proper procedures followed.
In performing the role of arbiter, there must be judicial tolerance of mistakes on the part of all participants, since the exigencies of criminal prosecution inevitably result in failure to abide by the exact requirements of the Criminal Procedure Law.
In reviewing the law concerning prosecutorial mishaps, this court holds that the process involved in the exercise of judicial discretion to determine whether good cause is shown to excuse the prosecutorial mishap, includes but is not limited to seeking responses to the following questions:
1. Was good faith shown by the prosecutor’s staff, notwithstanding the omission?
2. Further, in the context of the facts of the individual case, was the office mishap excusable? E.g., was this an isolated event, or part of a pattern of omissions?
3. Finally, did the delay in serving notice prejudice the defendant’s right to a fair trial, which means an opportunity to prepare for trial, move to suppress damaging admissions, garner and prepare witnesses, and review evidence so as to prepare a strategy for defense?
This court applies this analysis with full knowledge of the comments of Chief Judge Breitel in the Briggs case that the People may not rely upon a "lack of continuity” in the prosecutor’s office as reason to excuse a mishap. (38 NY2d, at p 324.) A heavy workload (or turnover of personnel) is no excuse for not having an orderly office procedure and by itself such failure is not excusable.
However, these phrases, or really labels — "lack of continu *315 ity” or " 'unusual circumstances’ ” or "absence of orderly office procedure” are not meaningful guides to a trial court faced with the need to exercise judicial discretion in the firing lines of the criminal justice system and not at the distant ratified altitude of an appellate court. (38 NY2d, at p 324.)
While the staff lawyers in a prosecutor’s office have the burden of " 'letting the left hand know what the right hand is doing’ ” the problem is frequently one of two left feet in the initiation of prosecution or worse, during the pretrial discovery process or during the trial itself. (38 NY2d, at p 324.)
Applying this court’s guidelines involving seeking responses to the questions stated above, this court concludes there was good cause shown in permitting the untimely service of a CPL 710.30 notice under the circumstances of this case.
While strict compliance with the requirements of CPL 710.30 is a proper objective, on good cause shown where there is no prejudice to the defendant, the People may serve an untimely notice upon the defendant of its intention to use culpatory statements made by him so long as served within a reasonable time prior to trial.
So long as there is no bad faith shown in the prosecutorial mishap and a further finding, there is no prejudice to the defendant the court in its discretion may permit the CPL 710.30 notice after the 15-day period has elapsed but prior to trial. Under certain circumstances, where there is actual notice of prospective use, there can be good cause for even dispensing with the statutory notice requirement. (People v Michel, 56 NY2d 1014 [1982]; see also, People v Swanton, 107 AD2d 829 [2d Dept 1985].)
The court is aware of its limited role and function and by the reasonable interpretation of the statute, here applied to the facts of this case, in no way assumes the role of legislator.[2]

. The doctrine of harmless error as compared to reversible error is worth nothing where a Trial Judge’s acts are reviewed by appellate courts.

. Hand, The Spirit of Liberty, How far is a Judge free in rendering a decision?, at 103 (1935).